IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN J. SEMAN, | ) | CASE NO. 1:13 CV 935 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| LOCAL LODGE 439 INTERNATIONAL | ) | |
| ASSOCIATION OF MACHINISTS AND | ) | **REPORT & RECOMMENDATION** |
| AEROSPACE WORKERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## Introduction

Before me by referral[1] in this *pro se* action by John J. Seman alleging that the International Association of Machinists and Aerospace Workers Local Lodge 439 and related entities (collectively "Union") breached its duty of fair representation is a motion by the Union to dismiss the matter as either untimely or for failure to state a claim upon which relief may be granted.[2] Seman has responded to that motion,[3] and the Union has replied to the response.[4]

For the reasons that follow, I will recommend that the Union's motion to dismiss be granted on the grounds that Seman's action is untimely.

---

[1] ECF # 6.

[2] ECF # 4.

[3] ECF # 8.

[4] ECF # 10.

**Facts**

The relevant facts are neither extensive nor disputed.

The matter arises from Seman's allegation that he was improperly denied six days of holiday pay by his employer during the 2011-12 holiday period.[5] Seman initiated a grievance proceeding through the Union on January 7, 2012.[6] The Union responded by phone on April 8, 2012, suggesting that Seman drop the grievance because it was without merit.[7]

Then, on July 9, 2012, Seman began treatment for thyroid cancer.[8] He states that by the middle of August he "realized that the union was going to let the grievance fail through inaction, so I went to the NLRB [on August 16, 2012] to have them 'push' the union to do something."[9] Less than one week later – on August 21, 2012 – Seman underwent a complete thyroidectomy, which involved treatment with a large dose of radioactive iodine that required Seman to be in quarantine for the next 30 days.[10]

The Union notified Seman in a certified letter dated September 21, 2012, that it believed Seman's grievance "has no merit," and so it agreed to accept an offer from the

---

[5] ECF # 1, Ex. A (complaint) at 4.

[6] ECF # 8 at 2.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

employer of one day's pay, not the six days sought by Seman.[11] A Linda S. Seman at Seman's Medina, Ohio address signed the certified mail return receipt on September 24, 2012.[12] That September 21, 2012, letter clearly informed Seman that his grievance "is now closed."[13] Sometime within that same month as the Union letter informing Seman of the compromise with the employer and the closing of his grievance, Seman filed a charge against the Union with the National Labor Relations Board.[14] He filed the present action against the Union on April 13, 2013.[15]

In support of its motion to dismiss this matter as untimely, the Union argues first that Seman's suit is subject to a six-month statute of limitations that begins to run when an employee discovers through due diligence the acts giving rise to his claim.[16] Further, the Union contends that Seman knew the basis for the present suit in mid-August of 2012, which is the point at which he states he knew the Union "was going to let his claim fail through inaction."[17] Therefore, the Union maintains that because the six-month limitation period

---

[11] ECF # 4, Attachment 2.

[12] *Id.*

[13] *Id.*

[14] ECF # 1 (complaint) at 3.

[15] *Id.* at 1.

[16] ECF # 10 at 2 (citing *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 578 (6th Cir. 1987)).

[17] *Id.* at 3 (citing ECF # 8 at 2).

began in August of 2012, but the present suit was not filed until April, 2013, the suit is untimely.[18]

Seman, for his part, argues that he was required to exhaust administrative remedies prior to commencing suit.[19] In that regard, he contends that any limitations period should not begin to run until either the end of November, 2012, when Seman concluded that his own discussions with the Union and his employer were fruitless, or perhaps on October 30, 2012, when the NRLB concluded the case Seman initiated in September, 2012.[20]

Seman also raises the additional argument that any limitations period should account for the fact that until October 15, 2012, he was disabled from his illness.[21] Moreover, he essentially raises a harmless error argument to excuse non-compliance with the limitations statute, claiming that missing the timeliness standard "by a week" resulted in no harm to the Union.[22]

---

[18] *Id.*

[19] ECF # 8 at 4.

[20] *Id.*

[21] *Id.*

[22] *Id.*

**Analysis**

**A.     Standard of review**

Inasmuch as Seman is here proceeding *pro se*, a somewhat more detailed and expansive statement of the applicable law is provided.

The Sixth Circuit notes in *Renner v. Ford Motor Company*[23] that, under normal circumstances, when a unionized employee believes that his employer has violated a CBA, he must pursue and exhaust the arbitration and employee-grievance procedures outline in the CBA before turning to the courts.[24] But, if the available employee-grievance procedure would be futile or if the union, having sole power to invoke that process has failed to do so, the employee may pursue a so-called hybrid § 301 suit in federal court.[25] Thus, because in such circumstances an employee's claims against both his Union and his employer "rise and fall together,"[26] such a hybrid § 301 action is understood to "implicate[] the interrelationship among a union member, his union, and the employer."[27]

The Sixth Circuit teaches that, because a hybrid § 301 claim is "wholly independent of any unfair labor practice charge before the NRLB, ... [a]n NLRB filing, therefore, does

---

[23] *Renner v. Ford Motor Co.*, 516 F. App'x 498 (6th Cir. 2013).

[24] *Id.* at 502 (citations omitted).

[25] *Id.*

[26] *Reynolds v. Ferro Corp.*, No. 06-CV-948, 2006 WL 2549390, at *3 (N.D. Ohio Sept. 1, 2006).

[27] *Garrish v. Int'l Union United Automobile, Aerospace and Agricultural Implement Workers of America*, 417 F.3d 590, 594 (6th Cir. 2005) (internal quotation omitted).

not toll or prevent the accrual of an unfair representation claim."[28] Thus, while the employee must exhaust internal union procedures before filing a hybrid § 301 action,[29] no such exhaustion requirement applies to potential recourse to the NLRB.

As the Sixth Circuit further observed in *Garrish v. UAW* as to the accrual of hybrid § 301 claims:

> A six-month statute of limitations applies to Plaintiffs' hybrid § 301 action. *See Martin v. Lake County Sewer Co.*, 269 F.3d 673, 677 (6th Cir. 2001) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). "Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996). While "[T]he determination of the accrual date is an objective one: 'the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *See Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994). Plaintiffs are "not required to sue on a hybrid claim until ... [they] reasonably should know that the union has abandoned [their] claim." *Wilson*, 83 F.3d at 757.[30]

Judge Lioi recently expanded on the analysis of when a hybrid § 301 claim is considered to have accrued:

> It is well-settled that the six-month time period "accrues from the date that the plaintiff 'discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Nida v. Plant Protection Ass'n Nat'l*, 7 F.3d 522, 525 (6th Cir.1993) (citation omitted). "In

---

[28] *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985) (citations omitted).

[29] *Clayton v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America*, 451 U.S. 679, 681-82 (1981) (citations omitted).

[30] *Garrish*, 417 F.3d at 594.

other words, the Section 10(b) period 'begins to run at the time an [individual] receives unequivocal notice of an adverse [ ] action rather than the time that action becomes effective.'" *Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 899 (6th Cir.1996) (quoting *Armco, Inc. v. NLRB*, 832 F.2d 357, 362 (6th Cir.1987), cert. denied, 486 U.S. 1042, 108 S.Ct. 2034, 100 L.Ed.2d 619 (1988)). The party against whom the ULP is lodged bears the burden of establishing that the charging party received such notice. *See Taylor*, 98 F.3d at 899.[31]

Significantly, as Judge Lioi further noted in *Drake v. Richardson*:

> The six-month limitations period for filing an unfair labor practice complaint is "procedural, not jurisdictional, and is therefore 'subject to recognized equitable doctrines.'" *See NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 967 (6th Cir. 2000) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395 n.11, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).[32]

**B.    Application of standard – the Union's motion to dismiss Seman's suit as untimely should be granted.**

Here, there is objective evidence that Seman, by his own statement, knew in August, 2012, that the Union was not going to pursue his grievance with his employer. There is even more explicit evidence of when Seman knew the Union abandoned his claim, and thus that the six-month limitations period had begun, in the certified letter from the Union dated September 21, 2012, received on September 24, 2012, which plainly and clearly informed Seman that the Union believed that his "grievance was now closed."[33]

Plainly, under the undisputed facts, even if the limitations period is considered to have begun on September 24, 2012, the date when he received the Union's certified letter,

---

[31] *Drake v. Richardson*, 948 F. Supp. 2d 817, 823 (N.D. Ohio 2013).

[32] *Id.* at 822 n.5.

[33] ECF # 4, Attachment 2.

Seman's decision not to file this suit until April 13, 2013,[34] would make out untimely under the law as stated above, absent some form of tolling.

In considering Seman's various arguments for tolling, there is no requirement here that an NLRB claim be filed or exhausted before initiating a hybrid § 301 suit such as this one. Therefore, Seman's argument that the limitations period should not begin until "October 30, 2012 when the NLRB finalized [disposition of] the case,"is unavailing.

Further, Seman's contention that the limitations period should not begin until even later, or November, 2012,[35] is also unpersuasive. Although he maintains that this is when he finally received closure on his grievance by learning that neither the Union nor the company would "ameliorate the problem," the fact is, under the plain reading of the law, that the limitations period begins when a reasonable person knows that the Union has abandoned his claim. Such an accrual date is determined by an objective inquiry. In other words, the assertion by a plaintiff that he was not yet satisfied that his grievance was closed "is not determinative if [he] did not act as [a] reasonable person[] and, in effect, closed [his] eyes to evident and objective facts concerning the accrual of [his] right to sue."[36]

---

[34] Although both Seman (ECF # 4 at 3) and the Union (*see*, ECF # 4 at 2) have made references to this suit being initially filed on April 2, 2012, April 2 is merely the date Seman signed an affidavit required to be included as part of his overall filing with the Lakewood Ohio Municipal Court. ECF # 1 at 2. The suit itself, including the signed affidavit, was not actually filed until April 13, 2012, as evidenced by the file stamp from the clerk of that court. *Id*.

[35] ECF # 8 at 4.

[36] *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996).

Here, as noted above, that "evident and objective fact" is the clear, direct, and unmistakable language of the Union's September 21, 2012, certified letter that Seman's "grievance is now closed" by virtue of the Union and employer having agreed to compromise his claim. The fact that Seman elected to pursue other attempts to re-open discussions with his union and employer does not change the reality that he was on notice with that letter that his union had abandoned his claim and the limitations period for bringing a hybrid § 301 case had begun.

In addition, Seman's contention that the limitations period should not begin until after he was free from any infirmities caused by his illness is refuted by the facts. Although he now asserts that the limitations period should not begin until October 15, 2012, because of physical limitations arising from his illness, he initiated the NLRB action in September, 2012, despite those same physical conditions. In effect, Seman was capable of prosecuting an NLRB action virtually at the same time in September, 2012, as he received the certified letter that informed him the Union considered his grievance closed. Further, that Seman actually initiated a new NLRB case during the time of his alleged incapacity defeats the argument that the illness excused Seman from the time requirements of a hybrid § 301 suit.

Finally, Seman's remaining arguments for tolling have no merit. Neither the assertion that he mistakenly relied on Ohio's fifteen-month statute of limitations for filing claims in small claims court nor an argument that his untimeliness is not harmful to the defendants[37] support equitable tolling. First, "'[i]t is well-settled that ignorance of the law alone is not

---

[37] ECF # 8 at 4.

sufficient to warrant equitable tolling.'"[38] Further, without any evidence of any other equitable considerations, "a court should not extend limitations by even a single day."[39] Here, the undisputed evidence is that Seman was fully capable of promptly initiating an action virtually immediately upon learning of his union's decision to close his grievance. The fact that the action chosen was, in retrospect, a poor choice, does not alter the conclusion that Seman alone is responsible for the choice and its consequences. And so, as noted by the Sixth Circuit in *Graham-Humphreys*, without any evidence that Seman's untimeliness is due in any way to factors outside of Seman himself, there can be no reason to proceed further to an examination of the amount of harm, if any, incurred by the defendants so as to provide an excuse for that untimeliness.

Therefore, I recommend finding that the present action was brought outside of the time allowed by the applicable limitations period and that this untimeliness is not excused by any statutory or equitable tolling.

## Conclusion

For the foregoing reasons, I recommend that the Union's motion to dismiss Seman's present suit as untimely be granted.

Dated: April 4, 2014                                         s/ William H. Baughman, Jr.
                                                             United States Magistrate Judge

---

[38] *Kamkondo v. Holder*, No. 90-3651, __ F. App'x __, 2014 WL 289455, at *2 (6th Cir. Jan. 28, 2014) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991))

[39] *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[40]

---

[40] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).